**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**JOSEPH LOPEZ**

      **Plaintiff,**               **CIVIL ACTION NO. 05-CV-70565-DT**

    **vs.**                         **DISTRICT JUDGE JOHN FEIKENS**

**COMMISSIONER OF**         **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

      **Defendant.**
_____/

**REPORT AND RECOMMENDATION**

This Court recommends that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**.

**PROCEDURAL HISTORY**

This is an action for judicial review of the final decision by the Commissioner of Social Security that the Plaintiff was not "disabled" for purposes of the Social Security Act. 42 U.S.C. §§ 423, 1382. The issue for review is whether the Commissioner's decision is supported by substantial evidence on the record.

Plaintiff Joseph Lopez has filed three prior applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). (Tr. 24-25). These prior applications are not before the Court.[1] Plaintiff's fourth DIB and SSI applications were filed on September 16, 2002. (Tr. 67-9, 257-263). Plaintiff's applications were initially denied on January 13, 2003. (Tr. 42, 276). Plaintiff sought review by an ALJ, and was given an administrative hearing before ALJ Micheal F. Wilenkin

---

[1] Because *res judicata* applies to the Commissioner's November 23, 2001 denial of Plaintiff's third DIB and SSI applications, his instant DIB and SSI applications cover the period from November 24, 2001 to the present. *See* 20 C.F.R. § 404.957(c)(1).

on March 11, 2004. (Tr. 286). The ALJ denied Plaintiff's claims in a written opinion issued August 27, 2004. (Tr. 24-33). The Appeals Council denied Plaintiff's request for review on December 30, 2004. (Tr. 12). The ALJ's March 11, 2004 written opinion is now the final opinion of the Commissioner. *See* 20 C.F.R. § 404.981. Plaintiff appealed the denial of his claims to this Court, and both parties have filed motions for Summary Judgment.

## MEDICAL HISTORY

Plaintiff was born on December 29, 1957. (Tr. 67). On May 29, 2001, he was hit by a car and sustained multiple. (Tr. 136). He was admitted to Mount Clemens General Hosptial on May 29, 2001 and underwent multiple physical and radiological examinations of his head, neck, spine, and ankle. (Tr. 136-49). His physicians concluded that he had no fractures, but had sprained his neck and ankle and suffered a intercranial injury. (Tr. 136). He was discharged from the hopsital on May 31, 2001. *Id.*

Plaintiff presented to Joseph Flynn, D.O. on June 6, 2001 complaining of neck and right ankle pain. (Tr. 176). On examination, there was no tenderness, swelling, or other evidence of injury in Plaintiff's neck or right ankle. *Id.* Dr. Flynn refilled Plaintiff's pain medications and discharged him. (Tr. 177).

Plaintiff sought outpatient psychiatric treatment at St. Joseph's Hospital in Macomb County on July 20, 2001. (Tr. 156). Plaintff was anxious and irritable, but was appropriately dressed, spoke clearly, and demonstrated a full affect. *Id.* Plaintiff claimed that he "lost control" without medication, and pleaded for additional prescriptions. (Tr. 187). Plaintiff's examining physician concluded that Plaintiff was bipolar and clinically depressed, and placed him on anti-depressants. *Id.*

Michael Kitto, D.O. examined Plaintiff on December 28, 2001 concerning his complaints of persistent severe back pain. (Tr. 173). Plaintiff's perilumbar muscles were tender, but he retained an excellent range of motion and normal strength. *Id.* Dr. Kitto concluded that Plaintiff had suffered a muscle strain, gave him Demerol and a Vistaril injection, and discharged him. *Id.*

On March 4, 2002, Frederick K. Lewerenz, D.O. reviewed x-ray's of Plaintiff's cervical and lumbar spine. (Tr. 214, 216). Dr. Lewerenz noted a probable muscle spasm in Plaintiff's cervical spine, with disc narrowing at the C5-6 and C6-7 levels, and possible anterior spur formation. (Tr. 214). Marginal anterior bone spurring was also apparent in Plaintiff's L4 and L5 vertebrae, but his lumbar spine was otherwise normal. (Tr. 217).

In a letter addressed to Plaintiff's lawyer and dated March 20, 2002, Dr Lewerenz described the results of a physical examination of Plaintiff he performed on the same day. (Tr. 211-212). He found that Plaintiff had severe neck and lumbar pain, and a drastically limited range of motion in the cervical and lumbar spine due to "mass muscle spasm." (Tr. 212). He suggested that Plaintiff undergo physical therapy, and stated that Plaintiff was totally disabled. *Id.*

Plaintiff was examined by Jasper E. McLaurin, a neurologist, on May 24, 2002. (Tr. 161). On examination, Plaintiff demonstrated cervical and lumbar tenderness, but had no muscle spasms. (162). Plaintiff had a decreased range of motion in the cervical spine, and complained of pain during deep knee bends, and heel and toe standing. *Id.* Straight leg raising tests were negative bilaterally. *Id.* Dr. McLaurin's examination of Plaintiff's cranial nerves revealed no abnormalities. *Id.* Plaintiff refused to complete EMG testing. *Id.*

Plaintiff was seen by Dr. Lewerenz in May, July, and August of 2002. (Tr. 203, 205, 206). Dr. Lewerenz consistently noted muscle spasms, positive straight leg raising tests, and a limited

range of lumbar motion. Id. On August 20, 2002, Plaintiff was examined by Joseph Flynn, D.O. (Tr. 169). Plaintiff told Dr. Flynn that he had run out of his prescription pain medications. (Tr. 169). On examination, Plaintiff had limited ranges of cervical and lumbar motion, but straight leg raising tests were negative. *Id.*

On September 6, 2002 Mark Zwiren, M.D. took CT images of Plaintiff's cervical and lumbar spine. (Tr. 202). The cervical image revealed bone spurring and narrowing of the cervical neuroforaminal spaces and of Plaintiff's spinal canal at C6-7. *Id.* The lumbar image was suggestive of a sequestered disc fragment at L4, and showed a narrowed, bulging disc at L3-4. *Id.*

On September 22, 2002 Plaintiff was examined by Stanley Materka, D.O. (Tr. 167). Plaintiff claimed that he had run out of pain medication, and complained of diffuse pain in his neck and lower back. *Id.* Dr. Materka administered Toradol, morphine, Demerol, and Vistaril, and gave Plaintiff a short Vicodin prescription. *Id.* However, Dr. Materka did not give Plaintiff full a refill of his pain medication prescriptions, as he suspect Plaintiff had become opioid dependent. *Id.* Dr. Lewerenz saw Plaintiff the following day and gave Plaintiff new pain medication prescriptions. (Tr. 200).

Plaintiff presented at the Mount Clemens General Hospital Emergency Room on October 1, 2002, again complaining of back and neck pain and adamantly requesting new prescriptions for narcotics. (Tr. 164). Plaintiff claimed that even light touching of his lumbar spine caused him severe pain. *Id.* However, straight leg raising tests were negative bilaterally, Plaintiff was able to walk on his heels and toes, and demonstrated good muscle tone and strength in both legs. *Id.* Calls to several area pharmacies made by William Halacoglu, D.O. revealed that Plaintiff had multiple recurring pain medication prescriptions. *Id.* Dr. Halacoglu suggested that Plaintiff might have an

opioid dependency problem, at which point Plaintiff became argumentative. *Id.* Plaintiff was discharged with prescriptions for Vioxx and Soma tablets, but not Vicodin or other requested narcotics. *Id.*

Plaintiff was examined by Dr. Lewerenz again in October and November, 2002. (Tr. 198-199). Dr. Lewrenz noted muscle spasms, stiffness, and a decreased range of spinal motion, but straight leg raising tests were negative bilaterally. *Id.*

Plaintiff appeared depressed and anxious, but not suicidal or psychotic when interviewed by mental health care professional in October 2002 and June 2003. (Tr. 179, 219). On December 9, 2002 a state agency physician reviewed Plaintiff's medical records and concluded that Plaintiff was capable of light work and could stand, sit, or walk for up to six hours in an eight hour workday. Plaintiff continued to see Dr. Lewerenz approximately once a month between December 2002 and February 2004. (Tr. 195-7, 231, 243-44, 247-54, 256). Plaintiff continued to exhibit muscle spasms and a decreased range of motion in the lumbar spine, but straight leg raising tests were generally negative. *Id.*

On June 6, 2003 N.B. Murthi, M.D. reported that Plaintiff suffered moderate restrictions his abilities to perform the activities of daily living and maintain social functioning, and that Plaintiff suffered continual episodes of deterioration or decompensation in work or work-like settings. (Tr. 220-222). In October, 2003, W.H. Van Houten, M.D., a state agency psychiatrist, reviewed Plaintiff's medical records in connection with a psychiatric review. (Tr. 114-127). He concluded that Plaintiff was clinically depresssed, bipolar, and possibly opioid dependent, and found that Plaintiff had mild restriction in maintaining the activities of daily living and mild difficulties in maintaining social functioning and concentration. (Tr. 124).

On December 16, 2003, Dr. Lewerenz completed a Medical Examination Report form, and opined that Plaintiff could not lift more than five pounds, could not use his arms for repetitive grasping, reaching, pulling, pushing, or fine manipulation, and could not sit, stand, or walk for any length of time in an eight hour workday. (Tr. 229). Dr. Lewerenz opined that Plaintiff was "totally disabled."

## **HEARING TESTIMONY**

At the administrative hearing, Plaintiff testified that could lift objects weighing up to fifteen pounds, walk up to fifty feet without stopping, stand for up to fifteen minutes, sit for up to thirty minutes, and could use his hands to grip, grasp, and handle without difficulty. (Tr. 309-310). He testified that he took seven to eight naps a day, each lasting between an hour and an hour and a half. (Tr. 307-8).

A vocational expert, Elaine Tripi also testified at the hearing. (Tr. 868). She testified that a person of Plaintiff's age, experience, and educational level would not be able to perform any of Plaitniff's past work if he suffered from all of the functional deficits claimed by Plaintiff. (Tr. 317). Ms. Tripi was then asked to testify about the availability of jobs for a person of Plaintiff's age, experience, and educational background who could lift up to five pounds frequently and ten pounds on occasion, could sit for up to six hours in an eight hour workday, could stand or walk for two hours in an eight hour workday, and who was restricted to simple routine work involving minimal contact with co-workers and supervisors and no production quotas. (Tr. 317-319). Ms. Tripi testified that such a hypothetical person could perform around 15,000 jobs in the Detroit area, including

**STANDARD OF REVIEW**

Title 42 U.S.C. § 405(g) gives this Court jurisdiction to review the Commissioner's decisions. Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997). Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)). It is not the function of this court to try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility. *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

In determining whether substantial evidence supports the Commissioner's decision, the Court must examine the administrative record as a whole. *Kirk v. Sec'y of Health and Human Servs.*, 667 F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even where substantial evidence also supports the opposite conclusion and the reviewing court would decide the matter differently. *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

**DISCUSSION AND ANALYSIS**

The Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis. In the first four steps, Plaintiff had to show that:

      (1)      he was not presently engaged in substantial gainful employment; and

      (2)      he suffered from a severe impairment; and

      (3)      the impairment met or was medically equal to a "listed impairment;" or

> (4)  he did not have the residual functional capacity (RFC) to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(e); 20 C.F.R.. § 416.920(a)-(e). If Plaintiff's impairments prevented him from doing his past work, the Commissioner would, at step five, consider his RFC, age, education and past work experience to determine if he could perform other work. If he could not, he would be deemed disabled. 20 C.F.R. § 404.1520(f). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Her*, 203 F.3d at 391. To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs." *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'" *Id.* (citations omitted).

In this case, the ALJ concluded that Plaintiff retained the functional capacity to perform skilled light work. Having found that Plaintiff's past work as a teacher is skilled light work, the ALJ concluded at step four that Plaintiff was not disabled because he retains the functional capacity to perform some of his relevant past work.

Plaintiff first argues that the ALJ should have found Plaintiff disabled at step three because he met the requirements of medical listing 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04(A) for depression. The ALJ's conclusion that Plaintiff did not meet the listing requirements was supported by substantial evidence on the record. The ALJ conceded that Plaintiff displayed symptoms meeting the 12.04 criteria between from October 1997 through December 19, 1997. However, to satisfy a medical listing at step three, Plaintiff's symptoms must persist or be expected to persist for a twelve

month period. A claimant does not satisfy § 12.04 unless he demonstrates at least two of the four criteria listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.04 B: (1) marked restriction of the activities of daily living; (2) marked difficulties maintaining social functioning; (3) marked deficiencies of concentration, persistence, or pace resulting in frequent failure to complete tasks in a timely manner; (4) repeated episodes of deterioration or decompensation in a work or work like setting. Substantial evidence supports the ALJ's conclusion that Plaintiff did not meet any of the first three criteria for any twelve month period beginning in 1997. Plaintiff's own self reports from 1998 and later show that he was able to maintain friendships, play golf, go to movies, and travel. Both examining and treating physicians noted Plaintiff's range of activities, and the evidence on the record supports the conclusion that Plaintiff did not suffer marked limitations in his activities of daily living or ability to maintain a social life. Similarly, Plaintiff's own self-reports and his treatment records do not show substantial limitations in Plaintiff's ability to complete tasks in a timely manner. Dr. Olen opined in February that Plaintiff's concentration and memory had substantially improved since 1997 once Plaintiff began treatment and retired from the school at which he was attacked. (Tr. 306).

Plaintiff next argues that the ALJ improperly discounted his allegations of pain. 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p govern an ALJ's credibility determination. They require that the ALJ consider a variety of factors in reaching a credibility determination, including the state of the medical evidence, treatment history, medication history, Plaintiff's daily activities, and any inconsistencies in Plaintiff's own testimony. Plaintiff's argument relies principally on the conclusory statements of Dr. Vincenti that Plaintiff was unable to work because he was disabled by pain. (Tr. 206-7). However, the objective medical evidence demonstrates that while Plaintiff experienced bouts of severe pain beginning in 1997, his various complaints have improved

substantially with physical therapy, rest, and pain medication. Plaintiff's treatment plan never included knee or back surgery, and his knee and back continued to function well enough to allow him to play tennis on a regular basis. The ALJ's conclusion that Plaintiff's subjective complaints of pain were not entirely credible was therefore supported by substantial evidence on the record.

Plaintiff argues that the ALJ failed to give proper deference to statements by Plaintiff's treating physicians that Plaintiff was disabled and could not work. The "treating physician rule" requires that an ALJ give complete deference to the well supported statements of treating physicans that are consistent with other substantial evidence of record. *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6th Cir. 1993). However, an ALJ may reasonably discount the opinions or statements of a treating physician when those statements are unsupported by objective evidence. *McCoy o/b/o/ McCoy v. Chater*, 81 F.3d 44, 47 (6th Cir. 1995). Dr. Vincenti's conclusory statements that Plaintiff is totally disabled and the statements of Drs. Olen and Keelin that Plaintiff is disabled in response to a questionnaire sent to them by Plaintiff's attorney are not entitled to mandatory deference. The treatment notes of Drs. Olen, Keelin, and Vincenti all show that Plaintiff's various limitations were substantially alleviated by 1998 through treatment. Moreover, Plaintiff's reported activities contradict the conclusions of Plaintiff's physicians that he is markedly or severely psychologically and socially limited. In light of these circumstances, the ALJ was reasonable in giving controlling weight to Plaintiff's self-reports, the treatment notes of Plaintiff's treating physicians, and the evaluations of Plaintiff's examining physicians.

The ALJ's conclusion that Plaintiff was not disabled is supported by substantial evidence on the record.

## **RECOMMENDATION**

The Commissioner's decision is supported by substantial evidence. Plaintiff's Motion for Summary Judgment should be **DENIED**, and. Defendant's Motion for Summary Judgment should be **GRANTED**.

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing objections which raise some issues but fail to raise others with specificity will not preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: May 02, 2006                    s/ Mona K. Majzoub
                                       MONA K. MAJZOUB
                                       UNITED STATES MAGISTRATE JUDGE

**Proof of Service**

     I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: May 02, 2006                     s/ Lisa C. Bartlett
                                                  Courtroom Deputy